RUTH FERTEL et al., Respondents, *v.* RESORTS INTERNATIONAL, INC., et al., Appellants.

First Department, January 3, 1974.

*Michael T. Wolin* of counsel (*D'Amato, Costello & Shea,* attorneys), for Resorts International, Inc., appellant.

*Joseph Arthur Cohen* of counsel (*Sidney A. Schwartz* with him on the brief; *Alexander, Schwartz & Cohen,* attorneys), for Paradise Island, Limited, appellant.

*Robert D. Kozol* of counsel (*Gluck & Kozol,* attorneys), for respondents.

*Per Curiam.* Plaintiffs, all Massachusetts residents, were allegedly injured as a result of a motor vehicle accident while vacationing at a resort hotel located on Paradise Island in the Bahamas. The hotel is owned and operated by defendant Paradise Island, Limited ("Paradise") and the mishap was assertedly caused by the negligence of its employee, the operator of the vehicle. Paradise is a Bahamian corporation whose stock is substantially owned by the codefendant Resorts, International, Inc. ("Resorts"), a Delaware corporation with offices located in New York City. Paradise is not authorized to do business in this State. It was nevertheless served here on the theory that it is the alter ego of Resorts, whose liability is predicated on the same contention. In view of our determination, we find it unnecessary to reach that issue. Application of the doctrine of *forum non conveniens* no longer depends on residence alone. (*Silver* v. *Great Amer. Ins. Co.,* 29 N Y 2d 356.) Where, as here, the plaintiffs are nonresidents, the accident occurred in the Bahamas and medical treatment was received in the Bahamas and in Florida, we find no justification for burdening our courts with this litigation. In reaching our decision we have taken note of the assertion by the physician attending two of the plaintiffs that a flight to the Bahamas instead of to New York would be unduly burdensome; and find it unconvincing.

Orders, Supreme Court, New York County (SAYPOL, J.), entered January 23, 1973, denying the respective motions of each defendant to dismiss the action on the ground of *forum non conveniens* should be reversed, on the law and as a matter of discretion, without costs or disbursements, and said motions granted upon condition that each defendant serves notice upon

plaintiffs, in writing, within 20 days of service upon them by the plaintiffs of a copy of the order to be settled herein, with notice of entry, that it will accept service of process in the Bahamas and appear in any action to be commenced therein by plaintiffs for the same relief demanded in the complaint herein and that in any action so commenced it will not plead, and thereby waives, the Statute of Limitations as a defense. In the event of failure to comply with the foregoing conditions, the orders should be affirmed, without costs and without disbursements.

CAPOZZOLI, J. (dissenting). The record is clear that Resorts International, Inc., is doing business in the Bahamas through its subsidiary, Paradise Island, Limited. Paradise is not independent of Resorts, it is, in effect, a department of Resorts. This view is strongly supported by the documents set forth in the record, such as affidavits by defendant's personnel, required governmental filings, advertisements, contracts and photographs.

In an affidavit executed by one David F. Edwards, described as assistant secretary and assistant treasurer of Resorts, submitted by the latter to the United States District Court for the Southern District of New York, in the case of *Sanders* v. *Resorts Int.,* amongst other things, he said: "It was and is the intention of Resorts to develop a complete resort facility at Paradise Island. * * * As will hereafter be noted, the Company undertook to develop Paradise Island, in part, through the medium of various Bahamian subsidiary corporations which it caused to be organized. None of the Bahamian subsidiaries described in the complaint ever existed prior to the Company's purchase of its interest in Paradise Island and each was organized to perform a certain function or functions ".

Again, in the same affidavit, we find:

"Resorts' sole Bahamian subsidiaries which are majority owned, as opposed to wholly-owned, are Paradise Island Limited and Island Hotel Company Limited. The company owns 75 per cent of Paradise Island Limited which, in turn, is the owner of approximately 650 acres of land and the owner and operator of two hotels, a golf course, a restaurant, a shipyard and a marina on Paradise Island. * * * The fact that the aforesaid two subsidiaries of Resorts are majority-owned, as opposed to wholly-owned, merely resulted from Mr. Hartford's desired retention of an interest in Paradise Island when he sold the same to Resorts. None of the aforesaid Bahamian subsidiaries was acquired, as aforesaid, as investments and all are operated by Resorts and its employees ".

In view of the documentary evidence contained in the record, it is difficult to understand the argument of Resorts that it should not be held responsible for the activities of Paradise in this case. I am satisfied on this record that Paradise is indeed the alter ego of defendant, Resorts, and that our courts have jurisdiction.

The accident in this case took place on May 5, 1969, on a lonely country road in Paradise Island, at about 10:30 at night. There is no denying the fact that, other than the four plaintiffs and the driver of the automobile, no one else witnessed the accident. The plaintiffs, particularly Mrs. Fertel, received serious injuries. Mrs. Fertel has required treatment by numerous doctors, of varying specialties, and is still under treatment. She is permanently crippled and has already expended in excess of $45,000 for her medical bills, with more bills to come because she is represented as being in need of medical attention for the rest of her life. Obviously, whatever treatment she was given during the five days that she was in the Bahamian hospital is a minute fraction of the medical attention which she has been receiving to date, bearing in mind that she was in a Boston hospital until December, 1969. The one doctor who has a complete knowledge of the medical aspects of Mrs. Fertel's case is Dr. Baker, and he has already executed an affidavit in which he has stated that he will not be able to go to the Bahamas as a witness.

In *Gulf Oil Corp.* v. *Gilbert* (330 U. S. 501, 508), the court said: "It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

Not infrequently a plaintiff with a transitory cause of action may have a wide choice of forums in which to sue and such forums often bear no relation to the cause of action or the parties and are many times selected by a plaintiff for the purpose of harassing a defendant. (*Silver* v. *Great Amer. Ins. Co.*, 29 N Y 2d 356.)

At page 360 of the last cited case the court said: "The doctrine of *forum non conveniens* was developed by the courts to counter such a step, 'to justify' * * * [a] 'stay or dismissal in situations in which it was found that, on balancing the interests and conveniences of the parties and the court, the action could better be adjudicated in another forum.' (Citing cases)".

In *Varkonyi* v. *Varig* (22 N Y 2d 333, 337–338), the court said: '' The question whether such a suit should be entertained is one which is in general committed to the discretion of the courts below, to be exercised by reviewing and evaluating all the pertinent competing considerations. (See *Bata* v. *Bata,* 304 N. Y. 51, 56–57, *supra*; *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 507–509.) We will not, ordinarily, interfere with the Appellate Division's exercise of such discretion unless there has been an abuse of discretion as a matter of law. Where, however, that court, in exercising its discretion, fails to take into account all the various factors entitled to consideration, it commits error of law reviewable by this court. [Citing cases.]

'' Among the pertinent factors to be considered and weighed, in applying the doctrine of *forum non conveniens,* are, on the one hand, the burden on the New York courts and the extent of any hardship to the defendant that prosecution of the suit would entail and, on the other, such matters as the unavailability elsewhere of a forum in which the plaintiff may obtain effective redress and the extent to which the plaintiff's interests may otherwise be properly served by pursuing his claim in this State ''.

It is established in the record that there were only five witnesses to this accident. Four of the witnesses, the plaintiffs, are residents of Massachusetts. The fifth witness was the employee of the defendant who was operating the automobile when the accident occurred and is the only witness residing in the Bahamas. The greatest part of the medical evidence, such as doctors' testimony, hospital records, etc., will come from Massachusetts. The one doctor who has a complete knowledge of the medical history of the case is a Massachusetts resident. Added to these facts, consideration should be given to the financial burden which will be placed on these plaintiffs in attempting to press a suit by long distance, in a foreign country. As against all these valid reasons for keeping the case in our New York courts there is not one scintilla of proof submitted by the defendants to indicate how they would be prejudiced if the action remains in New York.

In those cases where the doctrine of *forum non conveniens* has been applied the courts have, of necessity, found that there existed a second more convenient forum than the New York courts. Where is the more convenient forum which is open to these plaintiffs? They could not secure jurisdiction over the defendants in their home State of Massachusetts, so they came to New York, where the defendants have their executive offices.

If the majority directed a transfer of this suit to Massachusetts, and the defendants would agree to defend the case in that State, I would find no objection to such procedure. But, obviously, the defendants are not anxious to have this case tried in any American court; they would rather relegate the plaintiffs to the courts of a foreign land.

It is, of course, true, as is noted in the majority memorandum, that residence alone in the State of New York of either the plaintiff or the defendant is no guarantee that the case will remain here. (*Silver* v. *Great Amer. Ins. Co.*, 29 N Y 2d 356, *supra*.) But, in that case (p. 361), the court made it very clear that residence of a plaintiff or defendant is still '' of course, an important factor to be considered [although] *forum non conveniens* relief should be granted when it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and the convenience of the parties ''.

In the case at bar it is clear that the plaintiffs are not guilty of forum shopping, but, on the contrary, are unable to obtain jurisdiction over the defendants elsewhere in the United States. Indeed, they have expressed a willingness to go to the Massachusetts courts, thus relieving our courts of the burden of the case, if the defendants would agree to appear in that State, subject to proper, fair and just conditions.

In a post-*Silver* case, *Barry* v. *American Home Assur. Co.* (38 A D 2d 928, affd. 31 N Y 2d 684), the importance of the convenience of the witnesses was recognized. In dismissing the complaint in the latter case because of *forum non conveniens*, the court, amongst other reasons, called attention to the fact that (p. 928) : '' [t]en witnesses, all residents of the Delaware-Pennsylvania area, have signed affidavits with reference to their observations before the crash and after. The owner of the aircraft involved, as well as the repair and maintenance men are in the Delaware and Pennsylvania area. The Federal aviation agency which made a study of the accident and their investigators are all residents of the Delaware and Pennsylvania area. The convenience of the witnesses to and the investigators of the facts and cause of the occurrence would best be served by a trial in the State of Delaware ''.

A corporate defendant should have no cause for complaint because it is sued in its own State, and should bear the burden of showing that being sued in the State where it maintains its executive offices is unjust. But there is not a word in the record before us which in any way demonstrates what injustices

would accrue to the defendants if the action against them is continued in our New York courts. They do not list any witnesses who could be regarded as important to the issues of the case and they show no facts whatever which would justify holding that the defendants would be prejudiced in this State.

The language found in *Kiamesha Concord* v. *Greenman* (29 A D 2d 904, 905) is most pertinent to the situation at hand: "From the undisputed proof that plaintiff Ruth Greenman as a result of the accident is paralyzed from the waist down, it is properly inferable that great hardship will result should she be compelled to travel to a distant place and live there during the trial. (Citing cases.) It is proper in this case, also, for us to give some consideration to the convenience of plaintiffs' medical witnesses whose hospital and offices are in New York County".

Our own court, in the case of *Slaughter* v. *Waters* (41 A D 2d 810), decided after *Silver* v. *Great Amer. Ins. Co.* (29 N Y 2d 356, *supra*), held that the question of the residence of a party is an important question, although not necessarily determinative. In the *Slaughter* case plaintiff, a New York resident, stationed in North Carolina, as a United States Marine, was involved in a collision. He was confined to the Naval Hospitals in North Carolina and Virginia. He commenced his action in New York, obtaining jurisdiction by attachment of an automobile liability policy under the authority of *Seider* v. *Roth* (17 N Y 2d 111). By a vote of three to two our court denied the motion to dismiss and said, amongst other things: "While it is true that defendant's witnesses would be inconvenienced by a trial here, plaintiff would be similarly inconvenienced by the denial to him of access to our courts to redress his grievance. On the record before us, and after weighing all of the circumstances involved herein and balancing the conveniences and interests of the parties, we cannot conclude that New York is a clearly inconvenient forum or that the ends of justice and the convenience of the litigants would be best served by requiring plaintiff to bring his action in North Carolina." (*Slaughter* v. *Waters*, 41 A D 2d 810, 810–811, *supra*.)

There was a vigorous dissent which stressed that there was no connection whatever between the State of New York and the accident in North Carolina, except the residence of the plaintiff. Any one reading the case at bar and the *Slaughter* case must come to the conclusion that, whatever logic dictated the result of the majority in *Slaughter,* should dictate the same result in the case at bar so as to allow the action to remain in our

courts. I can do no better than to emphasize the language of the majority in *Slaughter* v. *Waters* (*supra*), because it is particularly apt to the facts in this case.

Under all the circumstances disclosed, I am forced to the conclusion that, unwittingly, an injustice is being done to the plaintiffs in granting the motion to dismiss. The court below exercised proper discretion in denying the motion and there is no justification for our court to interfere with that determination. I vote to affirm.

NUNEZ, J. P., KUPFERMAN, MURPHY and LANE, JJ., concur in *Per Curiam* opinion; CAPOZZOLI, J., dissents in an opinion.

Orders, Supreme Court, New York County, entered January 23, 1973, denying the respective motions of each defendant to dismiss the action on the ground of *forum non conveniens,* reversed, on the law and as a matter of discretion, without costs and without disbursements, and said motions granted upon condition that each defendant serves notice upon plaintiffs, in writing, within 20 days of service upon them by the plaintiffs of a copy of the order to be settled herein, with notice of entry, that it will accept service of process in the Bahamas and appear in any action to be commenced therein by plaintiffs for the same relief demanded in the complaint herein and that in any action so commenced it will not plead, and thereby waives, the Statute of Limitations as a defense. In the event of failure to comply with the foregoing conditions, the orders are affirmed, without costs and without disbursements.

Settle order on notice.